# EXHIBIT G-3

Insurance", the total of the applicable limits of "Underlying Insurance" and "Other Insurance"; or

2. with respect to any "Occurrence" that is not covered by "Underlying Insurance" or "Other Insurance", the amount of the Self-Insured Retention stated in Item (4)f of the Declarations.

**"Suit"** means a civil proceeding in which damages, because of "Bodily Injury", "Property Damage", "Personal and Advertising Injury" or damages and "Covered Pollution Cost or Expense" to which this insurance applies are alleged. "Suit" includes:

1. an arbitration proceeding in which such damages, or damages and "Covered Pollution Cost or Expense", are claimed and to which the "insured" must submit or does submit with our consent;

2. any other alternative dispute resolution proceeding in which such damages, or damages and "Covered Pollution Cost or Expense", are claimed and to which the "insured" submits with our consent; or

3. an appeal of a civil proceeding.

**"Temporary Worker"** means a person who is furnished to you to substitute for a permanent "Employee" on leave or to meet seasonal or short-term workload conditions.

**"Underlying Insurance"** means:

1. the policies and/or Self-Insurance listed in Schedule A - Schedule of Underlying Insurance;

2. the policies and/or Self-Insurance listed in any Supplemental Schedule of Underlying Insurance attached to this policy by endorsement; and

3. any other policies and/or Self-Insurance for newly acquired or formed organizations.

**"Your Product"** means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a. you;

    b. others trading under your name; or

    c. a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your Product" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Product"; and

2.  the providing of or failure to provide warnings or instructions.

"Your Product" does not include vending machines or other property rented to or located for the use of others but not sold.

**"Your Work"** means:

1.  work or operations performed by you or on your behalf; and

2.  materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Work"; and

2.  the providing of or failure to provide warnings or instructions.

**V.    LIMITS OF INSURANCE**

A.    The Limits of Insurance stated in Item 4(a), 4(b), 4(c), 4(d), or 4(e) of the Declarations and the rules below fix the most we will pay, regardless of the number of:

   1.  "Insureds";

   2.  "Claims" made or "Suits" brought; or

   3.  persons or organizations making "Claims" or bringing "Suits".

B.    The limit stated in Item 4(b) of the Declarations for the General Aggregate Limit is the most we will pay for all damages under INSURING AGREEMENT I, except for:

   1.  damages included in the "Products-Completed Operations Hazard"; "Personal and Advertising Injury", or "Occupational Disease"; and

   2.  damages covered in the "Underlying Insurance" to which no underlying aggregate limit applies.

C.    The limit stated in Item 4(c) of the Declarations for the Products-Completed Operations Aggregate Limit is the most we will pay under INSURING AGREEMENT I for all damages included in the "Products-Completed Operations Hazard".

D.    The limit stated in Item 4(d.) of the Declarations for Personal and Advertising Injury Aggregate Limit is the most we will pay under INSURING AGREEMENT I for all damages arising out of "Personal and Advertising Injury".

E.    The limit stated in Item 4(e) of the Declarations for Occupational Disease Aggregate Limit is the most we will pay under INSURING AGREEMENT I for all damages arising out of injury by disease to your "Employees."

F.    Subject to paragraphs B., C., D. and E., above, the Each Occurrence Limit stated in Item

4(a) of the Declarations is the most we will pay for the total of all damages and "Covered Pollution Cost or Expense" arising out of any one "Occurrence".

G.    If the applicable limits of "Underlying Insurance" or "Other Insurance" are reduced or exhausted by payments from one or more "Occurrences", the Limits of Insurance of this policy will apply in excess of such reduced or exhausted limits.

H.    The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the Policy Period, unless the Policy Period is extended after issuance of this policy for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding Policy Period for purposes of determining the Limits of Insurance.

## VI.    SELF-INSURED RETENTION

You will pay up to the amount of the Self-Insured Retention, as stated in Item 4(f.) of the Declarations, for any "Claims" or "Suits" covered by this policy and to which no "Underlying Insurance" or "Other Insurance" applies.

## VII. TERRITORY

This policy applies to "Occurrences" that happen anywhere and "Claims" made or "Suits" brought anywhere.

## EXCLUSIONS

This policy does not apply to:

A.   **EXPECTED OR INTENDED INJURY**

"Bodily Injury" or "Property Damage" expected or intended from the standpoint of the "Insured".

This exclusion does not apply to "Bodily Injury" resulting from the use of reasonable force to protect persons or property.

B.   **WORKERS' COMPENSATION AND SIMILAR LAWS**

Any obligation for which the "Insured" or any of its insurers may be held liable under any workers' compensation, unemployment compensation, disability benefits or any similar law.

C.   **EMPLOYMENT-RELATED PRACTICES**

"Bodily Injury" or "Personal and Advertising Injury" to

1.  a person arising out of any:

   (i)     refusal to employ that person;

   (ii)    termination of that person's employment;  or

   (iii)   employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2.  the spouse, child, parent, brother or sister of that person as a consequence of "Bodily Injury" or "Personal and Advertising Injury" to that person at whom any of the employment-related practices described in paragraph 1. above is directed.

This exclusion applies:

   (i)     whether the "Insured" may be liable as an employer or in any other capacity; and

   (ii)    to any obligation to share damages with or repay someone else who must pay damages because of the injury.

D.   **DAMAGE TO PROPERTY**

"Property Damage" to any property owned by you.

E.   **DAMAGE TO YOUR PRODUCT**

"Property Damage" to "Your Product" arising out of it or any part of it.

**F.    DAMAGE TO YOUR WORK**

"Property Damage" to "Your Work" arising out of it or any part of it and included in the "Products-Completed Operations Hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**G.    DAMAGE TO IMPAIRED PROPERTY OR PROPERTY NOT PHYSICALLY INSURED**

"Property Damage" to "Impaired Property" or property that has not been physically injured, arising out of:

1.  a defect, deficiency, inadequacy or dangerous condition in "Your Product" or "Your Work"; or

2.  a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "Your Product" or "Your Work" after it has been put to its intended use.

**H.    RECALL OF PRODUCTS, WORK OR IMPAIRED PROPERTY**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.  "Your Product";

2.  "Your Work"; or

3.  "Impaired Property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**I.    PERSONAL AND ADVERTISING INJURY**

"Personal and Advertising Injury" arising out of:

1.  breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

2.  the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

3. the wrong description of the price of goods, products or services stated in your "advertisement".

4. caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict "Personal and Advertising Injury"; or

5. arising out of a criminal act committed by or at the direction of any insured.

J.  **POLLUTION EXCLUSION APPLICABLE TO AUTOMOBILE AND MOBILE EQUIPMENT**

"Bodily Injury" or "Property Damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants":

1. that are, or that are contained, in any property that is:

   a. being transported or towed by, handled, or handled for movement into, onto or from, the "Automobile" or "Mobile Equipment";

   b. otherwise in the course of transit by or on behalf of the "Insured"; or

   c. being stored, disposed of, treated or processed in or upon the "Automobile" or "Mobile Equipment".

2. before the "Pollutants" or any property in which the "Pollutants" are contained are moved from the place where they are accepted by the "Insured" for movement into or onto the "Automobile" or "Mobile Equipment"; or

3. after the "Pollutants" or any property in which the "Pollutants" are contained are moved from the "Automobile" or "Mobile Equipment" to the place where they are finally delivered, disposed of or abandoned by the "Insured".

Paragraph 1. above does not apply to:

(i)     fuels, lubricants, fluids, exhaust gases or other similar "Pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the "Automobile" or "Mobile Equipment" or their parts, if the "Pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "Automobile" or "Mobile Equipment" part designed by its manufacturer to hold, store, receive or dispose of such "Pollutants" This exception does not apply if the fuels, lubricants, fluids or exhaust gases are intentionally discharged, dispersed or released, or if such fuels, lubricants, exhaust gases or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor; or

(ii)    heat, smoke, or fumes from a "Hostile Fire"; or

(iii)   a release of "Pollutants" caused by lightning or "Explosion".

Paragraphs 2. and 3. above of this exclusion do not apply to "Occurrences" that occur

away from premises owned by or rented to an "Insured" with respect to "Pollutants" not in or upon an "Automobile" or "Mobile Equipment" if:

(i)     the "Pollutants" or any property in which the "Pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "Automobile" or "Mobile Equipment"; and

(ii)    the discharge, dispersal, seepage, migration, release or escape of the "Pollutants" is caused directly by such upset, overturn or damage.

### K.   POLLUTION EXCLUSION APPLICABLE TO OTHER THAN AUTOMOBILE AND MOBILE EQUIPMENT

1.  "Bodily Injury", "Property Damage", "Personal and Advertising Injury", arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants":

a.  at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "Insured";

b.  at or from any premises, site or location which is or was at any time used by or for any "Insured" or others for the handling, storage, disposal, processing or treatment of waste;

c.  which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "Insured" or any person or organization for whom you may be legally responsible; or

d.  at or from any premises, site or location on which any "Insured" or any contractors or subcontractors working directly or indirectly on any "Insured's" behalf are performing operations:

(i)     to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of the "Pollutants"; or

(ii)    if the "Pollutants" are brought on or to the premises, site or location in connection with such operations by such "Insured", contractor or subcontractor.

2.  Any loss, cost or expense arising out of any:

a.  request, demand, order, or statutory or regulatory requirement that any "Insured" or others, test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "Pollutants"; or

b.  "Claim" or "Suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "Pollutants".

However, this paragraph does not apply to liability for damages because of

"Property Damage" that the "Insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such "Claim" or "Suit" by or on behalf of a governmental authority.

Paragraph 1a. and 1d. ii do not apply to "Bodily Injury" or "Property Damage" arising out of heat, smoke or fumes from a "Hostile" Fire"; or a release of "Pollutants" caused by lightning or "Explosion".

Paragraph 1. a also does not apply to "Bodily Injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

**L.   AIRCRAFT**

"Bodily Injury" or "Property Damage" arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft or entrustment to others of any aircraft.

This exclusion does not apply to:

1.   liability assumed under contract for the ownership, maintenance, operation, use, loading or unloading of aircraft; or

2.   aircraft chartered with crew.

**M.   WAR**

Liability assumed under a contract or agreement for "Bodily Injury" or "Property Damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, terrorism or revolution.

This exclusion does not apply with respect to "Occurrences" taking place in the United States of America, its territories or possessions, or Canada.

**N.   ASBESTOS**

"Bodily Injury", "Property Damage", or "Personal and Advertising Injury" in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

This policy does not apply to Economic Loss, Diminution of Property, Abatement Costs, or any other loss, cost, or expense including Equitable Relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers or any product containing asbestos, or asbestos fibers.

This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any "Claim" or "Suit" arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

As used in this exclusion:

Abatement Costs means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal, or replacement.

Diminution of Property means the diminishing or lessening in value of property.

Economic Loss means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

Equitable Relief means any remedy of relief, including restitution or injunctive relief, sought in a court with equitable powers.

O.   NUCLEAR ENERGY LIABILITY

1.  "Bodily Injury", "Property Damage", or "Personal and Advertising Injury":

a.  with respect to which an "Insured" under the policy is also an "Insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "Insured" under any such policy but for its termination upon exhaustion of its limits of liability; or

b.  resulting from the Hazardous Properties of Nuclear Material and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  "Bodily Injury", "Property Damage" or "Personal and Advertising Injury"  resulting from the Hazardous Properties of Nuclear Material, if:

a.  the Nuclear Material (i) is at any Nuclear Facility owned by, or operated by or on behalf of, an "Insured" or (ii) has been discharged or dispersed therefrom;

b.  the Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used,  processed, stored, transported or disposed of by or on behalf of an "Insured"; or

c.  the "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c.) applies only to "Property Damage" to such Nuclear Facility and any property therein.

As used in this exclusion:

Hazardous Properties include radioactive, toxic or explosive properties.

Nuclear Facility means:

1. any nuclear reactor;

2. any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing spent fuel, or (c) handling, processing or packaging waste;

3. any equipment or device used for processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

Nuclear Material means Source Material, Special Nuclear Material or By-Product Material.

Nuclear Reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property Damage" includes all forms of radioactive contamination of property.

Source Material, Special Nuclear Material and By-Product Material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

Spent Fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

Waste means any waste material (1) containing By-Product Material other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore produced primarily for its Source Material content, and (2) resulting from the operation by any person or organization of any Nuclear Facility included within the definition of Nuclear Facility under paragraphs (1) and (2).

## CONDITIONS

### A.   APPEALS

If the "Insured" or any "Insured's" underlying insurer elects not to appeal a judgment that is in excess of the "Retained Limit", we may elect to do so at our own expense.

### B.   AUDIT OF YOUR BOOKS AND RECORDS

We may audit and examine your books and records as they relate to this policy at any time during the Policy Period and for up to three years afterward.

### C.   BANKRUPTCY OR INSOLVENCY OF AN INSURED

Bankruptcy or insolvency of the "Insured" will not relieve us of our obligations under this policy.

### D.   BANKRUPTCY OR INSOLVENCY OF UNDERLYING INSURER

For all purposes of this policy, if any "Underlying Insurance" is not available or collectible because of:

1.  the bankruptcy or insolvency of the underlying insurer(s) providing such "Underlying Insurance"; or

2.  the inability or failure for any other reason of such underlying insurer(s) to comply with any of the obligations of its policy,

then this policy shall apply as if "Underlying Insurance" were available and collectible.

### E.   CANCELLATION OR NON-RENEWAL

1.  The First "Named Insured", as stated in Item 1 of the Declarations, may cancel this policy by mailing or delivering to us this policy or written notice of cancellation, stating when thereafter the cancellation is to be effective.

2.  We may cancel or non-renew this policy by mailing or delivering to the First "Named Insured" written notice at least:

    a.  10 days before the effective date of cancellation, if we cancel for nonpayment of Premium, as stated in Item 6 of the Declarations; or

    b.  60 days before the effective date of cancellation or non-renewal, if we cancel for any other reason, or non-renew.

3.  We will mail or deliver our notice to the First "Named Insured's" last mailing address known to us.

4.  Notice of cancellation or non-renewal will state the effective date of cancellation or non-renewal and will be effective for all "Insureds". The Policy Period will end on that date.

5. If this policy is canceled, we will send the First "Named Insured" any Premium refund due.

   If we cancel, return Premium will be pro rata. If cancellation is at the request of the First "Named Insured", return premium will be computed at 90% of pro rata unless prohibited by law or statute.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**F.    CHANGES**

This policy (including the Declarations and any schedules and endorsements attached) contains all the agreements between you and us concerning this insurance. The First "Named Insured" is authorized to make changes in the terms of this policy, with our consent.

This policy's terms and conditions can be amended or waived only by written endorsement issued by us and made a part of this policy.

**G.    DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT**

1. You must see to it that we are notified of any "Occurrence" which may result in a "Claim or Suit" under this policy. To the extent possible notice should include:

   a. how, when and where the "Occurrence" took place;

   b. the names and addresses of any injured persons and witnesses; and

   c. the nature and location of any injury or damage arising out of the "Occurrence".

   This requirement applies only when the "Occurrence" is known to:

   a. you, if you are an individual;

   b. a partner, if you are a partnership;

   c. a member, if you are a joint venture; or

   d. an "Executive Officer" or insurance manager, if you are a corporation; or

   e. a manager, if you are a limited liability company.

2. If a "Claim" is made or "Suit" is brought against any "Insured" that is likely to involve this policy, you must:

   a. immediately record the specifics of the "Claim" or "Suit" and the date received; and

   b. see to it that we are notified as soon as practical.

This requirement will not be considered breached unless the breach occurs after such "Claim" or "Suit" is known to:

   a.  you, if you are an individual;

   b.  a partner, if you are a partnership;

   c.  a member, if you are a joint venture; or

   d.  an "Executive Officer" or insurance manager, if you are a corporation; or

   e.  a manager if you are a limited liability company.

3.  You and any other involved "Insureds" must:

   a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with any "Claim" or "Suit";

   b.  authorize us to obtain records and other information;

   c.  cooperate with us in the investigation or settlement of any "Claim" or defense against the "Suit"; and

   d.  assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any "Insured" because of injury, damage or "Covered Pollution Cost or Expense" to which this insurance may also apply.

4.  No "Insured" will, except at that "Insured's" own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

**H.   FIRST NAMED INSURED**

The person or organization first stated in Item 1 of the Declarations will act on behalf of all other "Insureds" where indicated in this policy.

**I.   INSPECTIONS AND SURVEYS**

We have the right, but are not obligated, to:

1.  make inspections and surveys at any time;

2.  give you reports on the conditions we find; and

3.  recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the Premiums to be charged. We do not:

1.  make safety inspections;

2. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public; or

3. warrant that conditions are safe or healthful or comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

J.   **LOSS PAYMENTS**

1. We are liable for payment under this policy for any one "Occurrence" only when the amount of the "Retained Limit" with respect to such "Occurrence" has been paid.

2. If we are obliged to indemnify the "Insured" for any payment of judgments or settlements, the "Insured" must make a written claim within 12 months of:

   a. actually paying any amount in excess of the "Retained Limit"; or

   b. the "Insured's" liability being made certain by:

      (i)  the final judgment of a trial; or

      (ii) the written agreement of the "Insured", the claimant and us.

   If any later payments are made by the "Insured" for the same "Occurrence", written claim for these payments must likewise be made.  We will reimburse you for these payments within 30 days of confirming that they are payable by this policy.

3. The "Insured" will reimburse us promptly for any amount of judgments and settlements paid on behalf of the "Insured" that is within the Self-Insured Retention.

K.   **MAINTENANCE OF UNDERLYING INSURANCE**

You agree that the "Underlying Insurance" shall remain in force during the Policy Period and that:

1. the terms, conditions, and endorsements of the "Underlying Insurance" will not materially change;

2. the limits of "Underlying Insurance" will not change except for reduction or exhaustion in the aggregate or "Occurrence" limits due to payments for "Occurrences";

3. that the "Underlying Insurance" may not be canceled or non-renewed by either you or the insurance company without immediately notifying us;

4. that renewals or replacements of the "Underlying Insurance" will not be more restrictive in coverage or limits afforded;

5. that "Underlying Insurance" for any newly acquired or formed organization be not more restrictive than the terms, conditions, endorsements and limits of the policies and/or Self-Insurance listed in Schedule A - Schedule of Underlying Insurance.

If you do not meet these requirements, this insurance shall apply as if the "Underlying Insurance" were available and collectible.

**L.   OTHER INSURANCE**

If there is any collectible "Other Insurance" available to the "Insured", (whether such insurance is stated to be primary, contributing, excess or contingent), the insurance provided by this policy will apply in excess of, and shall not contribute with such "Other Insurance". This Condition does not apply to any insurance policy purchased specifically to apply in excess of this policy.

However, with respect to any person or organization qualifying as an "Insured" under, Insuring Agreement III., Named Insured and Insured, Item C.2., this policy will be primary to such "Other Insurance", but only to the extent and subject to the limits specifically required by the terms of the written contract giving rise to such insured status, but in no event will exceed the limits of insurance as stated in Item #4 of the Declarations.

This exception applies only when such exception is in the "Underlying Insurance".

**M.   PREMIUM**

The First "Named Insured" is responsible for the payment of all Premiums.  All other "Named Insureds" are contingently liable for payment of Premium if the First "Named Insured" fails to do so.

The Premium for this policy, as stated in Item 6 of the Declarations, is a flat Premium.  It is not subject to an adjustment unless an endorsement is attached to this policy.

**N.   SEPARATION OF INSUREDS**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the First "Named Insured", this insurance applies:

1. as if each "Named Insured" were the only "Named Insured"; and

2. separately to each "Insured" against whom a "Claim" is made or "Suit" is brought.

**O.   TITLES OR CAPTIONS OF POLICY PROVISIONS**

The title or caption of the sections and paragraphs of this policy and any attached endorsements are solely for convenience or reference.  They do not affect the provisions to which they relate.

**P.   TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any "Insured" has rights to recover all or part of any payment we have made under this

policy, those rights are transferred to us.  The "Insured" must do nothing after loss to impair these rights or the transfer thereof to us.  The "Insured" will cooperate with us and, at our request, will assist in the pursuit and enforcement of those rights.
If there is any money recovered, we will disburse that money, as follows:

1.  first, we will repay any actual payment made by the "Insured" that is in excess of the "Retained Limit";

2.  second, we will be repaid to the extent of our actual payment; and

3.  third, if any money remains, the "Insured" or any underlying insurer will be repaid to the extent of their actual payment.

If any expenses are incurred to recover money, we will share the expenses with the "Insured" or any underlying insurer in proportion to the amount that each is repaid.
If our recovery attempt is not successful, we will bear all of the recovery expenses.

If the Named Insured and the "Underlying Insurer", prior to the time of an "Occurrence", waive any right of recovery against a specific person or organization for any liability, we will also waive any rights we may have against such person or organization to the extent required by the written contract entered into by the Named Insured.

**Q.**   **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY.**

Your rights and duties under this policy may not be transferred without our prior written consent, except in the case of death of an individual "Named Insured".

**R.**   **UNINTENTIONAL FAILURE TO DISCLOSE**

Your unintentional failure to disclose all hazards or prior "Occurrences" existing as of the inception date of the policy shall not prejudice the coverage afforded by this policy.

```
DATE RUN: 03/30/01     *** DIRECT PREMIUM CODING SHEET ***

INSURED NAME: MARIETTA DRAPERY &                                    PAGE: 01

UMBRELLA/EXCESS                    POLICY: 553-081388-4              RENEWAL

*********************************************************************************

                              MAJ    COMM    TOWN    RATE    COVG
   CHART    ST    KND    AKC   PER    RATE    CODE    DATE    IND
   34A      11    1            908    1500            0401     3

   PG      POL                 TRN    CLASS          WRITTEN
   ID      TYP   RFFU    SUB   TYP    CODE           PREMIUM
   1       10            325    1     99935          4564.00

                              MAJ    COMM    TOWN    RATE    COVG
   CHART    ST    KND    AKC   PER    RATE    CODE    DATE    IND
   34A      11    1            896    1500            0401     3

   PG      POL                 TRN    CLASS          WRITTEN
   ID      TYP   RFFU    SUB   TYP    CODE           PREMIUM
   1       10            325    1     99935           789.00

                              MAJ    COMM    TOWN    RATE    COVG
   CHART    ST    KND    AKC   PER    RATE    CODE    DATE    IND
   34A      11    1            890    1500            0401     3

   PG      POL                 TRN    CLASS          WRITTEN
   ID      TYP   RFFU    SUB   TYP    CODE           PREMIUM
   1       10            325    1     99935          4647.00
```

DATE RUN: 03/30/01        *** RECT PREMIUM CODING SHEET ***

INSURED NAME: MARIETTA DRAPERY &                                          PAGE: 02

UMBRELLA/EXCESS                         POLICY: 553-081388-4                      RENEWAL

*********************************************************************************

| TYP BUS | INSURED NAME | POL EFF MO | YR | POL EXP MO | YR | TERM CODE | CALC | PRODUCTION ENTITY | OFF | AGY ISS | CO | MONO ID | TRAN NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | MARIETTA DRAP | 04 | 01 | 04 | 02 | 12 | 0 | 702676 | NR | | 7 | 0 | 0 |

| TRN MO | EFF YR | TRN MO | EXP YR | TRAN KIND | TOTAL PREMIUM | INITIAL PREMIUM | EFF MO YR | DEFERRED PREMIUM | EFF MO YR | NO PMT | MODE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 04 | 01 | 04 | 02 | D | 10000.00 | | | | | 00 | 0 |

| ACT EFF MO DY | YR | SYN TAX | ACT | POL EFF MO DY YR | POL EXP MO DY YR | INSURED NAME | CNC | F R | D B | P C | CMS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 04 01 | 01 | 79 | A | 04 01 01 | 04 01 02 | MARIETTA DRAP | | 2 | N | N | 03213893 |

| SYN TAX | ACT | EPP | AUD IND |
|---|---|---|---|
| 71 | A | 10000 | 0 |

| SYN TAX | ACT | AGG LIM | FTZ |
|---|---|---|---|
| 72 | A | 2 | |

| SYN TAX | ACT | REN POL |
|---|---|---|
| 73 | A | 5530767948 |