IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

THE NORTH RIVER INSURANCE )
COMPANY and UNITED STATES )
FIRE INSURANCE COMPANY, )
                                           )
      Plaintiffs, )
                                           )
v. )      CAUSE NO. 06-CV-517-WDS
                                           )
MARIETTA DRAPERY & WINDOW )
COVERINGS CO., INC., et al., )
                                           )
      Defendants. )

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is plaintiffs' motion for summary judgment (Doc. 72) to which defendant, Marietta Drapery & Window Coverings Co., Inc., (Marietta Draperies) has filed a response and cross-motion for summary judgment (Doc. 75), and plaintiffs a response to the cross-motion (Doc. 78).

## BACKGROUND

In this action plaintiffs, The North River Insurance Company ("North River") and United States Fire Insurance Company ("U.S. Fire"), seek declaratory judgment from this Court to determine their rights and obligations under commercial general liability (CGL) insurance policies as those policies pertain to claims alleged against the defendant, Marietta Drapery in a related case, *Ronald Alsup, Robert Crews and Magnum Properties LLC v. 3-Day Blinds, Inc.* The *Alsup* case, was originally filed in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, and was removed to this Court and assigned to Judge Murphy, 06-244-GPM. *Alsup* is a class action in which the plaintiffs seek recovery against some 62 manufacturers and

distributors and retailers of miniblinds which allegedly had cord lengths which were negligently designed in such a manner that there were a number of cord loop and inner cord strangulations of children and infants. The *Alsup* case was remanded to Madison County by Judge Murphy for lack of subject matter jurisdiction (*See Memorandum & Order* of June 8, 2006, Doc. 110).

Marietta Drapery manufactures and distributes draperies and window blinds. North River issued various CGL policies to Marietta Drapery covering the years from 1994 to 1995, and 1998 to 2001. U.S. Fire issued various umbrella liability policies to Marietta Drapery covering the period from 2000 to 2002. Marietta Drapery seeks summary judgment in this declaratory judgment action, arguing that North River and U.S. Fire are obligated to defend and indemnify it against the claims alleged in the state court *Alsup* litigation. The specific claims asserted by the plaintiffs in the *Alsup* litigation include: common law fraud, fraudulent omission, negligent omission, breach of the Illinois Consumer Fraud and Deceptive Practices Act, concert of action, civil conspiracy, breach of implied warranties, negligence, and declaratory judgment.

## **LEGAL STANDARD**

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c): *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Springer v. Durflinger,* 518 F.3d 479, 483-84 (7th Cir. 2008); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See, Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1999) (citing *Celotex*, 477 U.S. at 323). Once a motion for summary judgment has been made and properly

supported, however, the non-movant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See, id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. *See, Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Durflinger*, 518 F.3d at 483 (quoting *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2007)). The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*, 475 U.S. 574, 586 (1986) (quoted in *Durflinger*, 513 F.3d at 484).

Under Illinois law, the "construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Nichols v. Certain Underwriters at Lloyd's London*, 771 N.E.2d 595, 599 (Ill. App. Ct. 2002) (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 620 N.E.2d 1073, 1077 (Ill. 1993)).

## **ANALYSIS**

An insurer's duty to defend is broader than its duty to indemnify. *Country Mut. Ins. Co. v. Carr*, 867 N.E.2d 1157, 1160 (Ill. App. Ct. 2007). Under Illinois law, whether an insurer has a duty to defend is determined by comparing the allegations in the underlying complaint to the language of the insurance policy at issue. *Id*. (citing *Outboard Marine Corp. v. Liberty Mut. Ins.*

3

*Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992)). Allegations in the complaint are to be construed in favor of the insured and the provisions of the insurance policy are to be liberally construed in favor of coverage. *Id.* Should even one of the theories of recovery under the complaint fall within the potential coverage of the policy, then the insurer has a duty to defend the insured on all the theories of recovery alleged in the complaint. *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa v. Glenview Park Dist.*, 632 N.E.2d 1039, 1042-43 (Ill. 1994)).

Under Illinois law, "the duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy." *Zurich Ins. Co. v. Raymark Indus., Inc.*, 514 N.E.2d 150, 163 (Ill. 1987). In other words, the issue of whether there is a duty to indemnify arises only "once the insured had incurred liability as a result of the underlying claim." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 492 (Ill. 2001). Because there has yet to be a determination of any liability in the state-court *Alsup* litigation, this Court cannot yet not determine whether North River and U.S. Fire have a duty to indemnify Marietta Drapery.

North River's CGL policy states that its coverage extends to "'bodily injury' or 'property damage' only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
> (2) The "bodily injury" or "property damage" occurs during the policy period.

North River's CGL policy includes an exclusion for expected or intended injury, stating that: "This insurance policy does not apply to: 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." The policy defines bodily injury as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." The policy further defines property damage as

4

> (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Finally, the North River policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define "accident."

U.S. Fire's umbrella policy covers the sums in excess of the "Retained Limit" of North River's CGL policy. The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions that result in 'Bodily Injury' or 'Property Damage' that is not expected or intended by the 'Insured.'" Like North River's policy, Fire Insurance's policy also does not define "accident."

Under Illinois law, when the term "accident" is not defined in an insurance policy, then it is deemed ambiguous. *Carr*, 867 N.E.2d at 1161. Thus, the term must be given a liberal construction in favor of the insured. *Id.* Illinois courts have defined "accident" as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." *Id.*; *Aetna Causality & Surety Co. v. Freyer*, 411 N.E.2d 1157, 1159 (Ill. App. Ct. 1980).

In *United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, the Illinois Supreme Court reiterated that the proper construction of the term "occurrence" turns on whether the person performing the acts intended or expected the result, not whether the acts were performed intentionally. 578 N.E.2d 926, 932 (Ill. 1991). Therefore, if "the actor expects or intends the injury to follow from the act, there is no coverage under the policy. However, even an intentional act will be covered under the policy language at issue if it causes an unexpected or

5

unintended result." *Atlantic Mut. Ins. Co. v. Amer. Academy of Orthopaedic Surgeons*, 734 N.E.2d 50, 58 (Ill. App. Ct. 2000).

The state-court *Alsup* complaint alleges that the defendants in that case have known since 1985 about the strangulation hazard posed by the miniblinds, (06-CIV-244, Doc. 1 at ¶ 56), and, as stated earlier, alleges causes of action for common law fraud, fraudulent omission, and deceptive practices under the Illinois Consumer Fraud and Deceptive Practices Act, all of which require a showing of intentional action. Specifically, the *Alsup* complaint alleges that "[e]ach of the defendants either knew or recklessly disregarded *the potential ramifications* of disclosing the defects to plaintiffs and Class members, and failed and/or refused to do so…" and that the unreasonable dangers and defects of the miniblinds were "*well known*." ( See ¶ ¶ 96, 112(d) (emphasis added)). The *Alsup* complaint clearly contemplates that the defendants, including Marietta Drapery, could and did expect the resulting injury of strangulation from the manufacture and distribution of its miniblinds. Because the *Alsup* complaint alleges that strangulation was an expected result of the defendant's allegedly fraudulent and deceptive business practices, these actions are, under Illinois law, intentional acts, and therefore, not accidents, and cannot fall within the definition of "occurrence" within the coverage of the two CGL insurance policies. *Atlantic Mut.,* 734 N.E.2d at 58.

The *Alsup* complaint also alleges claims for concert of action, civil conspiracy, and breaches of implied warranties. Illinois courts have held that where the factual allegations of an underlying complaint alleging concert of action and civil conspiracy claims make it clear that a failure to disclose information was intentional, then there can be no basis for coverage. *Atlantic Mut.*, 734 N.E.2d at 59-60. Here, the *Alsup* complaint clearly alleges that defendants "engage[d] in a conscious course of conduct to lie, conceal and misrepresent through omission

6

the hazards associated with corded miniblinds …" Compl. ¶ 124. Thus, these acts were also not accidents, and therefore, cannot fall within the definition of "occurrence" within the coverage of the policies.

The same is true for the allegations of breaches of implied warranty. In *Diamond State Ins. Co. v. Chester-Jensen Co.,* an Illinois appellate court held that claims for breach of warranty are, by their very nature, not accidental, and thus cannot fall within the definition of "occurrence" in a general liability insurance policy. 611 N.E.2d 1083, 1091-92 (Ill. App. Ct. 1993). The court reasoned that: "The mere failure of a product to perform as warranted is not beyond the realm of expectation and is foreseeable by the parties. In fact, it is this expectation that provides the impetus for requiring a warranty from the vendor in the first place. While such failure is most likely unintentional, it cannot be considered an "accident" within the meaning of the policy because the 'natural and ordinary consequences of an act do not constitute an accident." *Id.* (citing *Aetna Cas.*, 411 N.E.2d at 1159). Thus, breaches of implied warranty do not constitute "occurrences" under the two CGL insurance policies.

Defendant responds that while the aforementioned claims do not fall within the definition of "occurrence" necessary to establish coverage, the allegations in *Alsup* based on negligent omission and negligence would establish a basis for coverage under the policies. The Court, however, disagrees. See, *West Am. Ins. Co. v. Vago*, 553 N.E.2d 1181, 1182 (Ill. App. Ct.. 1990). In *Vago*, the Illinois appellate court considered whether Vago's two homeowners insurance policies provided coverage for an underlying tort action alleging battery, infliction of emotional distress, and restraint. Although the underlying complaint spoke in terms of negligence, the complaint, read as a whole, alleged specific facts of conscious conduct that could not be described as merely accidental. *Id.* at 1184. The court reasoned:

7

> While count V of the tort complaint uses terminology generally associated with negligence, speaking of Vago's 'duty to act with due care' and his alleged 'breach of said duty,' that count incorporates the specific factual allegations of the other four counts. According to these allegations, Vago grabbed the waitress from behind, locked his arms around her waist, and thrust his pelvis against her buttock several times. Such a course of conduct is clearly intentional and not merely negligent or accidental.

*Id.* Because the underlying complaint alleged conduct that clearly required conscious action, the court entered a declaratory judgment stating that the insurers had no duty to defend Vago with respect to the underlying litigation. *Id.* at 1185.

Similarly, the underlying *Alsup* complaint incorporates the specific facts alleged in its preceding paragraphs in regard to both counts of negligent omission and negligence. Compl. at ¶¶ 100, 138. These preceding facts include such assertions that each of the defendants pursued "a common plan, scheme and design to negligently" fail to inform Plaintiffs of the unreasonable dangerous and defective nature of their miniblinds" and, "members of the industry, including each Defendant, knew and/or know that [the standard they adopted] did not adequately address strangulation …" Compl. at ¶¶ 5, 89. Read as a whole, these assertions of the *Alsup* complaint allege more than merely accidental conduct. Applying the reasoning of *Vago*, the Court **FINDS** that the *Alsup* allegations are that there was a "common plan" and conscious disregard of an injury that cause an expected result. In fact, the very essence of the *Alsup* complaint, even in the context of the negligence claims, is that the defendant could and should have *reasonably* expected the resulting injury.

Thus, even the claims of negligent omission and negligence alleged in the *Alsup* complaint are not accidental actions. As expected injuries, they do not fall within the definition of "occurrence" pertaining to bodily injury or property damage stated in the coverage of North

8

River and U.S. Fire's insurance policies. Accordingly, the Court **FINDS** that there is no theory of recovery that falls within the coverage of the North River and U.S. Fire insurance policies' duty to defend.

## CONCLUSION

Accordingly, the Court **GRANTS** plaintiffs' motion for summary judgment and enters summary judgment as to North River and U.S. Fire's duty to defend. The Court **DENIES** defendant's cross-motion for summary judgment as to North River and U.S. Fire's duty to defend and sua sponte **DENIES** defendant's cross-motion for summary judgment as to North River and U.S. Fire's duty to indemnify as premature. The Court also **DENIES** plaintiffs' motion to alter or amend the Court's Order denying Marietta Drapery's Motion to Dismiss, or in the alternative, to Stay, this action. Each party shall bear its own costs.

**IT IS SO ORDERED.**

**DATED: July 31, 2008.**

                                      **s/ WILLIAM D. STIEHL**
                                            **DISTRICT JUDGE**